

1

Mr. Piero A Bugoni Pro - Se
160 W. Camino Real #191
Boca Raton, FL 33432

FILED

APR 27 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA



IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

Piero A. Bugoni
                PLAINTIFF

vs

Google Incorporated,
Microsoft Corporation,
Yahoo! Incorporated
                DEFENDANTS

Case No.:

**CV20      2883**

COMPLAINT

JURY  DEMANDED



## I. JURISDICTION

1)      This Court has Jurisdiction per 28 USC 1331 because claims charged herein arise

under and are brought pursuant to the Laws and The Constitution of The United States.

2)      Per 28 U.S.C. § 1367 This Court may supplement its Jurisdiction herein over claims

brought pursuant to State Law, wherein the Parties reside, do business, are incorporated, or

that may otherwise apply to this matter, and is inseparable in nexus to this matter.

3)      This Court has Jurisdiction over private parties Google Incorporated, Yahoo!

Incorporated, and Microsoft Corporation, per 28 USC 1332, because they corporations

incorporated in and which do business in and among several of the United States.

28

4)      This Court has Jurisdiction because Plaintiff seeks more than $75,000 in damages.

1

5)   All statutory claims of Jurisdiction supra are pursuant to The Constitution of The United States of America, and per Article III thereof.

## II. VENUE

6)   Venue exists herein per 28 USC 1391 because the acts of Defendants Yahoo! and Google that are charged by claim herein were committed in and from The State of California.

## III. PARTIES

7)   Google Incorporated is a Corporation incorporated in The State of Delaware , and which does business in the United States from its Headquarters in California.

8)   Microsoft Corporation is a Corporation incorporated in The State of Washington, and which does business in the United States from its Headquarters in Washington State.

9)   Yahoo! Incorporated is a Corporation incorporated in The State of Delaware, and which does business in the United States from its Headquarters in California.

10)   Plaintiff is a Citizen and Resident of the United States, appearing Pro-Se herein as an Individual Person.

## IV. STATEMENT OF CLAIM

11)   This Complaint charges Three Counts that all arise from the publication by Defendants of information regarding Plaintiff. That information may be factually true, it may be false and defamatory, or misleading, it may be re-publication of Public Records published by government entities, or it may be publication of records or information maintained and disseminated by private parties. In all cases the publication of that information by Defendants is commercial speech. In all cases relevant to this matter, the

28

1

information published by Defendants is used by other parties for "Employment Purposes" as described in 15 U.S.C. ¶ 1681b(a)(3)(B), or for business transactions initiated by them, and not Plaintiff, and is used contrary to 15 U.S.C. ¶ 1681b(a)(3)(F)(i). In all cases relevant to this matter all publication by Defendants of ANY information regarding Plaintiff causes him to lose employment that is actually acquired, or would otherwise be acquired but for the publications by Defendants, and it causes Plaintiff to lose Contract Business that was actually acquired or would be but for the publications by Defendants. Those publications by Defendants further interfere with Plaintiff's Liberty To Contract, they intrude upon his Seclusion, interfere with his Right To Be Left Alone, interfere with Economic Opportunities to Plaintiff and his Economic Advancement, and violate his Peace and Dignity. Ultimately these losses incurred by Plaintiff, and the interference to his Life caused by the acts of Defendants does cause and is causing Plaintiff to live with extreme emotional and financial distress, and in no case did Plaintiff nor does Plaintiff consent to publication by Defendants of ANY information regarding him whatsoever, nor to any investigation of him whatsoever by nor through the "Search Engine" services offered by Defendants.

## V. FACTS COMMON TO ALL COUNTS

12)   Plaintiff is an American Citizen, born in America, and has lived in America his entire Life. As such, Plaintiff is entitled to all the Constitutional, Statutory and Common Law protections afforded by this Nation.


13)   Plaintiff operates in pursuit of paid Employment as an Individual person. For the purpose of this Complaint, "Employment" means as it would in any Federal Statute or Common Law, wherein Plaintiff himself is payed as an "Employee", and not an "Independent Contractor".


14)   Plaintiff operates in pursuit of Contract Business as a Single Person Corporation,

28

incorporated in the State of Florida, and as such is employed by that Corporation as its

1

President, (and any other roles as needed), and is payed a Salary of One Dollar per Year.

15)   Plaintiff additionally operates in pursuit of Contract Business as a "Sole Proprietor", not incorporated, an Individual Person contracting business, and is payed a Salary of whatever Revenue remains after expenses incurred for conducting that business are payed.

16)   In all cases Plaintiff individually is the ultimate bearer of all costs, debts, liabilities and losses incurred in pursuit of Employment as an Employee.

17)   In all cases Plaintiff individually is the ultimate bearer of all costs, debts, liabilities and losses incurred in pursuit of Employment as a Sole Proprietor.

18)   In all cases Plaintiff individually is the ultimate bearer of all costs, debts, liabilities and losses incurred in operating a "Small Business" Corporation.

19)   Plaintiff pursues the Business and Employment described herein via two primary methods. Plaintiff advertises information regarding his skills and services offered via the Free Press medium known as the "Internet", from which interested parties contact Plaintiff and solicit him for Employment or Contract Business. Plaintiff additionally responds to Employment and Contract Business offers offered by other parties, likewise by publication in the Free Press.

20)   In all cases the parties offering Business and Employment use the publication services offered by Defendants to inquire about Plaintiff for his suitability to that Business or Employment, and ultimately reject him from that business or employment based on the information provided to them by Defendants.

28

21)   Defendants Google Incorporated, Microsoft Incorporated, and Yahoo! Incorporated

1

publish a "Search Engine" service by which parties may inquire about any person simply by submitting that person's name via a data-entry form that is presented electronically. The service offered by Google is referred to as "Google.com" and using that service is colloquially referred to as a "Google Search". Likewise, a "Yahoo! Search" can be performed by the service known as "Yahoo.com", and Microsoft Incorporated offers the same service via "Bing.com".

22)   When a party uses these services to inquire about Plaintiff, all information that is returned is irrelevant, false, misleading, libelous, or False-Light defamatory. (See Exhibits 1, 2. 3, Computer Screen Images of "Google", "Yahoo!", and "Bing" search results regarding Plaintiff).

23)   Because in all cases relevant to this matter, the parties using Defendants' services use them during the course of prospective Business or Employment evaluations, those parties use Defendants services to obtain a "Consumer Report", or an "Investigative Consumer Report" as defined in 15 U.S.C. ¶ 1681a, regarding Plaintiff. (And likewise others as well).

24)   Because Defendants' publication service is, and can be used to obtain "Consumer Reports", and "Investigative Consumer Reports", for the purposes of this Compliant, they are acting as "Consumer Reporting Agencies" within the Full Meaning of 15 U.S.C. ¶ 1681a et seq. (Herein the "FCRA").

25)   Because in all cases relevant to this matter, the Character and Purpose of the inquiry made by inquiring parties using Defendants' search services is the same as that would be made to a Consumer Reporting Agency Defendants are acting as "Consumer Reporting Agencies" in those instances.

28

26)   Plaintiff has cause to know that prospective employing and business parties and

1    partners are rejecting Plaintiff outright, or rescinding otherwise successfully negotiated

offers based on obtaining "Consumer Investigative Reports" from Defendants' because in

the preponderance of cases they have told him so. In cases where he was not notified

outright, Plaintiff has cause to believe the cause of the lost business or employment is the

same, because a course of conduct engaged in with others for the purpose of engaging in

Business or Employment with Plaintiff was abruptly halted, for no apparent reason, with no

explanation, or a superficial one at best, (deceitful at worst), when otherwise it was

proceeding normally, and positively.

27)    The Injury of lost and losing Business and Employment described supra has existed

for several years now, continues in Plaintiff's Life, and will continue, if it is not stopped. It

has left Plaintiff financially destitute, In Forma Pauperis, more than $100,000 in debt, and

unable to pay these debts on the Revenue he is able to generate. It has left Plaintiff unable to

care for his Female Loved Ones, elderly and companion, and unable to provide for them the

Quality of Life they desire, and which Plaintiff promised. Plaintiff is currently performing

Day Labor for minimum wage, after having a successful career of more than 20 years, that

has payed more than $100,000 per year since before the Turn of the Century. Prior to the

existence of the services offered by Defendants, Plaintiff had a very high percentage of

successful business and employment transactions. That is, if Plaintiff engaged in any

prospective employment or business discussion at all with some other party, it would

eventually lead to Plaintiff engaging in Contract Business with them, and completing the

work, or being employed by them for a duration of time that would make sense in the

circumstances. What never happened would be the discussions being abruptly halted with no

further contact, nor Plaintiff being removed from a building while waiting to begin a Job

Interview because immediately prior, the interviewing party had done a "Google Search"

about Plaintiff. Since the existence of Defendants' publications, that has happened.

28    28)    In addition, a staffing agency, namely KForce Incorporated has informed Plaintiff that

1

they will not introduce Plaintiff to any of their customers because they did a "Google Search" on him, and because of the results displayed. Because Plaintiff does business with such agencies for the purpose of producing work for hire for their customers, and these such agencies have hundreds of such customers, the Consumer investigative and reporting service offered by Defendants known as their "Search Engine" deprives Plaintiff from obtaining any such work for hire from these customers, and all opportunity do so through such agencies. (See U.S. Supreme Court Case #17-1585).

29)   Specific examples of the aforementioned lost business, employment, and opportunities thereof include but are not limited to the following:

i) In mid 2014 after being arrested and released for charges that would later be dismissed, with prejudice, Plaintiff received a request from a "Staffing Agency" to perform work for a client. After preliminary negotiations with the Agency. Plaintiff appeared at the Client for an interview. Literally, the very moment the interview was to begin, instead of the Client appearing in the interview room to begin the meeting, the staffing agent appeard and notified Plaintiff that he would have to leave because the Client just did a "Google Search" about Plaintiff and saw information regarding that arrest.

ii) Shortly thereafter, Plaintiff received a request for work from a small business, for a short-term project. and did perform the work, and was payed. However, the Client who had initially indicated that they would need further work thereafter, and who did initially express express complete satisfaction for the work done, and Plaintiff's abilities to do it, terminated the relationship, without explanation, and never pursued any further business with Plaintiff. In the brief discussion that took place at that time, the Customer, who had initially seemed to like Plaintiff personally, and Professionally was now acting as though he were afraid of Plaintiff. It was a bizarre change in demeanor toward Plaintiff that cannot be explained any other way.

iii) Approximately two years later, Plaintiff received multiple similar solicitations from KForce Incorporated, another "Staffing Agency". After various discussion with them,

28

1

their agents indicated to Plaintiff that they would not present Plaintiff to their Clients because their they and their Clients perform similar searches using Defendants' search service, and because of the information regarding Plaintiff that is displayed therefrom.

iv) Approximately two months prior to the filing of this Complaint, Plaintiff appeared for an interview with a Client, arranged through a "Staffing Agency". Plaintiff met first with a Vice President, and then with the team with which he would be working. Both of those meetings went well, and based on more than twenty years such experience it was Plaintiff's perception that he would be able to close a deal with that company. Plaintiff then met again with the Vice President, and instead of at that point engaging in the usual closing discussion, and tentative (or actual) agreement to do business, the Vice President simply escorted Plaintiff from the premises. He was very brusque in his manner and simply said: "Have a nice day". (And nothing more). Thereafter he indicated to the Agency that his Company would not be doing business with Plaintiff under any circumstances, and gave no explanation as to why.

v) Approximately one month prior to the filing of this Complaint, after responding to an advertisement for work needed by a small business, Plaintiff solicited that company, and engaged in initial discussions with them. On the day that Plaintiff was to begin work, Plaintiff appeared on-site, and instead of beginning work, the operator of that business now acted reticent toward Plaintiff, and as though Plaintiff was not supposed to be there, (and apparently should have known that), or that such a start date had not been prior agreed. After brief discussion, the business operator stated to Plaintiff that he should disclose matters of his personal Life, because as an owner of that business he had given lots of people "second chances". Prior to that date, all discussion with the business operator was a consultation with them as to how Plaintiff could and would use his skill and provide work products to them that would broaden their advertising, and increase their Revenue, and the business owner indicated that he looked forward to Plaintiff doing so.

vi) in addition to the occurrences described supra in this Paragraph, there have been

28

countless other occurrences where Plaintiff engages in preliminary business discussions with

1

potential Clients, that always go well, that then ultimately end abruptly with those Clients giving no explanation, nor further contact, and upon Plaintiff contacting them, those persons behaving avoidantly toward Plaintiff.

30)   Defendants deny at all times that they are operating a Consumer Reporting Agency, but in all cases relevant to this matter, persons use their search engine service to investigate and obtain information about a specific person, a "Consumer". It is that usage that subjects Defendants, their "Search Engine" service, and its usage to regulation pursuant to the FCRA.

31)   Defendants claim that they are engaged in "Journalism", or other Protected Speech. In all cases relevant to this matter, Defendants are only re-publishing Public Records, or re-publishing Public Records that are aggregated and re-published by other private parties. There is little or no original content produced by them, and all content published by Defendants is for the sake of generating revenue. Defendants charge advertising fees to other parties so that those parties' publications may be preferentially found by their "Search Engines", and their "Search Engine" service itself is offered as a free "loss-leader" for attracting business to their paid services.

32)   Private republications of State nor Federal Records have none of the Authority nor Constitutional Guarantee of Accuracy that inures from the Sovereign that produces and keeps them. Nor are they intended for any purpose that would be illegal or tortious in the Sovereign that produced them.

33)   In all cases relevant to this matter when Plaintiff was engaging in business with other parties via a Corporation he presides, and a Consumer Investigation of Plaintiff by those parties, using defendants "Search Engine" services, and a "Consumer Report" of Plaintiff was furnished by Defendants, that Consumer Investigation was impermissible, and a

28

1

violation of the FCRA. In such a case, Defendants "Search Engine" service cause a corporation to lose business, because they published information about its president, and Defendants are liable for the costs of that lost business. Because Plaintiff is the ultimate bearer of all costs, debts, liabilities and losses of that Corporation, and must pay those costs, and debts personally, and because the losses of that Corporation inure upon Plaintiff, Defendants are liable to Plaintiff personally for the losses they cause the Corporation he presides.

34)   Likewise in all cases relevant to this matter where Plaintiff operates as a "Sole Proprietor" Independent Contractor, the use by other parties Defendant's "Search Engine" products to investigate him in connection with that business is also a violation of the FCRA.

35)   In no case relevant to this matter did nor does Plaintiff consent to any party investigating him for any reason whatsoever, nor by any means whatsoever, including but not limited to the "Search Engine" services offered by Defendants.

36)   In no case whatsoever did or does Plaintiff consent to any Defendant herein reporting ANY information regarding him whatsoever, to any party, for any reason whatsoever.

37)   In all cases and at all times, Defendants know full well that their "Search Engine" services are used by persons as described herein, and that that usage does cause the damages upon persons as charged herein, and with complete indifference, deliberate negligence, and gross malice do continue to publish information regarding individuals to prospective business partners and employers, and do continue to operate a *de-facto* Consumer Reporting Agency in that reports information about Consumers without their consent, in violation of the FCRA.

28

38)   Plaintiff has cause to know based on Information, Belief, Personal and Professional

1

experience that he can prove that Adverse Action was taken against him by prospective Employers and Business Partners as a result of their use of Defendant's "Search Engine" services, because those services record the "IP Address" and other Identifying Data, of the parties using those services, and the information they were investigating, and upon Discovery thereof, Plaintiff will be able to show that the parties searching for information regarding him are the self-same parties that Plaintiff was involved in prospective Business and Employment discussions with, and that those searches took place at the same time that those parties took Adverse Action toward Plaintiff in regard to that Employment and Business.

## VI. CAUSE OF ACTION

39)    All Facts and Claims stated in Section V of this Complaint supra, are incorporated by reference into each Count charged infra, in addition to any particular Facts stated in each Count. All Counts charged infra apply to all Defendants named herein.

**Count 1:**

False-Light Personation

40)    In all cases all publication by Defendants of any information regarding Plaintiff are a False-Light Personation for the simple reason that Plaintiff is an Actual Person, and the Consumer Reports reported by Defendants are just that, Reports. (Not an Actual Person). To whatever extent they effect a personation, all Personations are false *in se* in that they are not the Person themselves, but merely a Personation thereof. The degree to which they can be considered true varies, and because Truth versus Falsity is a binary arrangement, less-than-true, means false.

41)    Regarding the personation that is effected by the Consumer Reports reported by Defendants, in all cases regarding Plaintiff, the nature of those Reports is that they convey no information regarding Plaintiff's ability to perform work, deliver work product, nor his

28

1

professional nor practical skills nor qualifications. The information presented by Defendants to persons inquiring about him serves to subject him only to pillory, obloquy and public humiliation, or to present him as some kind of liability. The scope of those Reports is typically only to include private for-profit republications of Public Records, not those published by government offices themselves, and is preferential to show arrest and booking photographs, and material related to civil and criminal court cases. The information presented in these Reports also includes random, or remotely related information that is no way connected to Plaintiff, but nonetheless contributes falsely to the totality of the Personation that is created.

42)    Because of this, potential and actual employers and business partners take Adverse Action against Plaintiff, and either deny employment and business, terminate existing business or employment discussions with Plaintiff, or rescind actual offers that have been made or terminate actual or actual work that has begun.

43)    This conduct by Defendants is Tortious because it causes people to deal with other persons based on the information presented by Defendants, and not based on the actual person they are dealing with.

**Count 2:**

Intrusion Upon Plaintiff's Seclusion / Invasion Of Plaintiff's Personal Affairs.

44)    Count 1 of this Complaint is incorporated by reference as Cause of Action to this Count.

45)    In all cases and at all times Plaintiff has the Right To Be Let Alone.

46)    The Employment and Contract Business in which he engages for financial subsistence and profit are strictly his Personal Affairs. Defendants have no place whatsoever involving

28

1

themselves in Plaintiffs Personal Affairs, and no legitimate reason for doing so. Nor did they

nor do they, nor ever will they have any consent from Plaintiff to do so.

47)    The Consumer investigative and reporting services offered by Defendants intruded

and does intrude upon Plaintiff's seclusion because in all cases they report upon request, and

without Plaintiff's consent, information regarding Plaintiff to Plaintiff's prospective

employers and Business Partners. These reports cause those parties to terminate all

prospective business and employment offered to Plaintiff because of the False-Light

personation of Plaintiff caused by the publications of Defendants. This causes Plaintiff to

suffer financial losses, lost economic opportunity, inability to repay debt, and creates a

necessity for Plaintiff to incur further debt he cannot overcome in order to maintain any kind

of Life, and to pay for all goods and services necessary thereto.

**Count 3:**

FCRA Violations

48)    As stated supra, in all cases relevant to this matter, Defendants are acting as a

Consumer Reporting Agency, and furnishing "Consumer Reports", or "Investigative

Consumer Reports" to other parties without the consent of the parties being reported. In the

case at hand, (and many others), those Reports are used in a manner that is regulated or

prohibited by the FCRA regarding their use for Employment and Business purposes. In all

cases relevant to this matter Adverse Action was taken against Plaintiff based on those

Reports. In cases where Plaintiff was notified of the Adverse Action and it's cause, Plaintiff

and all parties similarly situated are unable to dispute that Adverse Action because

Defendants claim to not be acting as Consumer Reporting Agencies. In cases where Plaintiff

was not notified of the cause of the Adverse Action, or even that an Investigation was done,

this is a violation of the FCRA in that those Investigations are done without Plaintiff's

consent, (or that of any party similarly situated), and when Adverse Action is taken as a

28    result of those Investigations, Plaintiff, and all persons similarly situated are denied

1

opportunity to dispute that Adverse Action.

49)    In all cases relevant to this matter, and Counts 1 – 3 supra, Defendants are liable for the lost Business and Employment suffered by Plaintiff because their publications cause Plaintiff to be subject to suspicion and distrust *a priori* in his dealings with others, and that would not exist otherwise but for the publications about Plaintiff made by Defendants.

## VII. RELIEF REQUESTED

50)    All Defendants be preliminarily enjoined from reporting any information whatsoever regarding Plaintiff during the pendency of this matter.

51)    All Defendants be permanently enjoined from reporting any information whatsoever regarding Plaintiff upon judgment or settlement in this matter.

52)    Declaratory Judgment that Defendants are acting as Consumer Reporting Agencies when persons are searched for FCRA regulated purposes, via Defendant's search services.

53)    Compensatory damages in the amount of all of Plaintiff's lost employment and business caused by the publications of Defendants.

54)    Statutory damages for each FCRA violation found.

55)    Treble Damages where applicable.

56)    $100,000,000 punitive damages upon each defendant for their malice.

57)    Defendants be ordered to give notice to all persons using their search service to search the names of living persons in the United States that such searches are subject to FCRA Regulation and Prohibition, and that identifying information regarding them is being recorded for the purposes of assisting the parties searched and government officials with bringing legal actions against them for wrongful use of that information.

58)    Defendants be ordered to create and provide to the Public an information search service that provides to Individuals all information retained by Defendants about any party that has searched for them by name.

28

## VIII. PRE-EMPTIVE SETTLEMENT OFFER

1

59)   The purpose of this Offer is to preempt costly, delaying, and needless litigation in this matter, and to divert funds that would otherwise be payed by Defendants for attorneys to file responsive or dispositive pleadings in this matter.

60)   Plaintiff stipulates to settle this matter permanently and forever with each Defendant for the cost of $10,000 in damages per Defendant, and a permanent cessation by each Defendant from any further publications of ANY KIND regarding Plaintiff.

61)   This offer is reasonable because the damages sought are less than the cost of attorneys' fees to file any responsive or dispositive pleading in this matter, and because cessation of publishing information regarding Plaintiff requires minimal time and effort on the part of Defendants, and is fully within the scope of their ordinary business practices, (computer programming).

62)   This Settlement Offer shall expire for each Defendant upon the filing of any responsive or dispositive pleading in this matter by such Defendant, and any settlement made pursuant hereto shall become forfeit upon any future publication by any Defendant of any further information regarding Plaintiff.

63)   Opposing counsel is hereby notified that failure to pursue a favorable settlement for their client, that is less than the cost of filing initial responsive or dispositive pleadings, and instead pursuing needles costly litigation solely for profit, constitutes attorney malpractice.

64)   Plaintiff consents in advance to This Court extending the time for Defendants to file answers in this matter to allow each Defendant time to pursue pre-litigative settlement of this matter.

Submitted to the Court, This 22nd Day of April, 2020.

s/Piero Bugoni/

28   Mr. Piero A. Bugoni, Plaintiff Pro – Se

1

Certificate Of Delivery

The Original of This Complaint was delivered to This Court, In Forma Pauperis, by Plaintiff, via United States First Class Mail.

28

Piero Bugoni - Google Search                                      https://www.google.com/search?sxsrf=ALeKk00y...

Go♥gle          Piero Bugoni                                      ✕  🔍                          ⠿  ③

🔍 All     🖼 Images     📰 News     🛒 Shopping     ▶ Videos     ⋮ More          Settings    Tools

About 2,270 results (0.49 seconds)

www.supremecourt.gov › DocketPDF  ▾  PDF
**Supreme Court of the United States**
Supreme Court of The United States of America. **Piero Bugoni**. Petitioner. V. Taylor O'Brien
et al. Respondents. On Petition For Writ of Certiorari to the Florida.
You've visited this page many times. Last visit: 3/7/20

caselaw.findlaw.com › fl-supreme-court  ▾
**PIERO BUGONI v. STATE OF FLORIDA | FindLaw**
Supreme Court of Florida. **PIERO** A. **BUGONI** Petitioner(s) v. STATE OF FLORIDA
Respondent(s). CASE NO.: SC17-21. Decided: April 20, 2017. Petitioner's ...
You've visited this page 3 times. Last visit: 10/10/19

Images for Piero Bugoni

    

→   More images for Piero Bugoni                                    Report images

casetext.com › Browse cases › 6th Cir. › SD OH › 2011 › September  ▾
**Bugoni v. Charles, Case No. 2:10-CV-1173 | Casetext Search ...**
Plaintiff **Piero Bugoni** ("Bugoni") brings the instant action against Defendants Charles (last
name unknown) ("Charles"), C M Towing, Inc. ("C M Towing"), and ...

casetext.com › Browse cases › 11th Cir. › MD FL › 2014 › June  ▾
**Bugoni v. Florida, Case No. 8:14-cv-127 6-T-33TGW ...**
VIRGINIA M. HERNANDEZ COVINGTON. ORDER. This matter comes before the Court
sua sponte. On May 30, 2014, Plaintiff **Piero Bugoni** filed a document ...

law.justia.com › cases › florida › fourth-district-court-of-appeal  ▾
**PIERO A. BUGONI vs PAM BONDI, ET AL. :: 2017 :: Florida ...**
**PIERO** A. **BUGONI** vs PAM BONDI, ET AL. Annotate this Case · Download PDF. Select
print range. All. Current Page. Pages: Enter page numbers and/or page ...

www.4dca.org › search
**Fourth District Court of Appeal**
16-1788, Case Name **PIERO** A. **BUGONI** vs PAM BONDI, ET AL. Disposition Affirmed,
Note, Release Date 12/21/17. File PDF Download of 16-2023 Download ...

www.docketbird.com › ... › 2015-cr-00000 through 2015-cr-00499  ▾
**State of Minnesota v. Bugoni Criminal Court Docket Sheet**
... of Minnesota v. **Bugoni**, in the District of Minnesota. ... ORDER as to **Piero** A **Bugoni**,
remanding the case to Hennepin County District Court. (Written Opinion).
You've visited this page 2 times. Last visit: 2/28/20

www.casemine.com › ... › 2006 › November  ▾
**BUGONI v. COFFMAN - CaseMine**
Plaintiff **Piero** A. **Bugoni** brought this pro se 42 U.S.C. § 1983 action against Defendants
James Coffman, Ernest Alcala, Dean Martinez, and John Mallaburn, ...

www.govinfo.gov › app › details › USCOURTS-ohsd-2_10-cv-01173  ▾
**10-1173 - Bugoni v. Last Name Unknown et al - Content ...**

Exhibit 1                                                          4/7/20, 2:08 PM

Piero Bugoni

🔍

👤 America...

Web    Images    Video    News    More    Anytime

Get beautiful photos on every new browser window.  Download >>

**Piero Bugoni (Alessandro), 53 - Boca Raton, FL Has Court ...**
www.mylife.com/piero-bugoni/e82605481596
To See Latest Info including Criminal & Court Records and Court Judgements, First Sign In
Below.

Location: Boca Raton, FL

**Piero Bugoni - Image Results**



More Piero Bugoni images

**BUGONI A PIERO Inmate 194771: Arizona DOC Prisoner Arrest
Record**
www.rapsheetz.com/.../PIERO_BUGONI/194771
PIERO, BUGONI A 194771 View arrest, prison and release information for this inmate that has
been incarcerated at the Arizona Prison sytem (DOC)

**Piero Bugoni - Seattle, WA Background Report at MyLife.com™**
www.mylife.com/piero-bugoni/e61101813023232
FREE Background Report & Reputation Score (3.75) for Piero Bugoni in Seattle, WA - View
Criminal & Court Records | Photos | Address, Email & Phone Number | Personal Review |
Income & Net Worth

**PIERO BUGONI v. STATE OF FLORIDA | FindLaw**
caselaw.findlaw.com/fl-supreme-court/1857331.html
Case opinion for FL Supreme Court PIERO BUGONI v. STATE OF FLORIDA. Read the
Court's full decision on FindLaw.

**Piero Bugoni - 3 Public Records Found**
www.instantcheckmate.com/people/piero-bugoni
Piero Bugoni in the US. We have 3 records for Piero Bugoni ranging in age from 51 years
old to 51 years old. Piero has been found in 4 states including Washington, Florida, California,
Arizona. Possible related people for Piero Bugoni include Piero Alessandro Bugoni,
Elizabeth Pola Bugoni, Paul Anthony Bugoni, Deborah Jean Rompre.

**STATE v. BUGONI | Case No. 15-CR-0157 (SRN ...**
www.leagle.com/decision/infdco20150522a17
ORDER. SUSAN RICHARD NELSON, District Judge.. In March 2015, defendant Piero A.
Bugoni was charged with four traffic offenses in Hennepin County District Court. Two months
later, Bugoni filed a pro se notice of removal in this District, alleging that his constitutional
rights were being violated in the state proceedings.

**Supreme Court of the United States**
www.supremecourt.gov/DocketPDF/17/17-1585/47927/...
Piero Bugoni Petitioner V. Taylor O'Brien et al. Respondents On Petition For Writ of Certiorari
to the Florida Fourth District Court Of Appeals. PETITION FOR WRIT OF CERTIORARI Piero
Bugoni, 160 W. Camino Real, #191 Boca Raton Florida 33432 Petitioner, Pro - Se.

**BallCam Concept Video - YouTube**
www.youtube.com/watch?v=QQm8fk6KEXU
Sep 06, 2012 · The BallCam was first conceived in 2008 by Piero Bugoni. It is currently
owned by BallCam Technologies Inc. Help us fund the BallCam on IndieGoGo The IndieGo...

Views: 281          Video Duration: 34 sec
Author: TheBallCam

Exhibit 2

4/7/20, 2:10 PM

Piero Bugoni (Alessandro), 53 - Boca Raton, FL Has Court ...

https://www.mylife.com/piero-bugoni/e82605481596
To See Latest Info including Criminal & Court Records and Court Judgements, First Sign In Below.
**Location:** Boca Raton, FL

### Images of Piero Bugoni
bing.com/images

    

See more images of Piero Bugoni

BUGONI A PIERO Inmate 194771: Arizona DOC Prisoner Arrest ...

https://www.rapsheetz.com/arizona/doc-prisoner/PIERO_BUGONI/194771
**PIERO, BUGONI** A 194771 View arrest, prison and release information for this inmate that has been incarcerated at the Arizona Prison sytem (DOC)

PIERO BUGONI v. STATE OF FLORIDA | FindLaw

https://caselaw.findlaw.com/fl-supreme-court/1857331.html
Case opinion for FL Supreme Court **PIERO BUGONI** v. STATE OF FLORIDA. Read the Court's full decision on FindLaw.

Piero Bugoni - Seattle, WA Background Report at MyLife.com™

https://www.mylife.com/piero-bugoni/e61101813023232
FREE Background Report & Reputation Score (3.75) for **Piero Bugoni** in Seattle, WA - View Criminal & Court Records | Photos | Address, Email & Phone Number | Personal Review | Income & Net Worth

Piero Bugoni - 3 Public Records Found

https://www.instantcheckmate.com/people/piero-bugoni
**Piero Bugoni** in the US. We have 3 records for **Piero Bugoni** ranging in age from 51 years old to 51 years old. **Piero** has been found in 4 states including Washington, Florida, California, Arizona. Possible related people for **Piero Bugoni** include **Piero** Alessandro **Bugoni**, Elizabeth Pola **Bugoni**, Paul Anthony **Bugoni**, Deborah Jean Rompre.

[PDF] Supreme Court of the United States
https://www.supremecourt.gov/DocketPDF/17/17-1585/...

Exhibit 3